UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MONTE DINEHDEAL,<br><br>Defendant. | 3:16-CR-30107-RAL<br><br>**OPINION AND ORDER<br>DENYING MOTION FOR<br>COMPASSIONATE RELEASE** |

Defendant, Monte Dinehdeal, filed a pro se motion for compassionate release. Doc. 110. Pursuant to the Amended Standing Order 20-06, his case was categorized as Intermediate Priority. Doc. 111. The Federal Public Defender for the Districts of South Dakota and North Dakota (FPD) filed a supplement to Dinehdeal's motion presenting additional evidence and arguments. Doc. 117. The United States opposed the motion. Doc. 120. The FPD has replied. Doc. 123. For the following reasons, this Court denies Dinehdeal's motion for compassionate release.

**I.    Background**

On April 25, 2017, Dinehdeal pleaded guilty to conspiracy to distribute a controlled substance. Docs. 61, 67. On July 17, 2017, this Court held a sentencing hearing in Dinehdeal's case and imposed a custody sentence of 120 months followed by five years of supervised release. Docs. 85, 86 at 2–3.

Dinehdeal's conviction resulted from distributing methamphetamine on the Rosebud Sioux Indian Reservation in South Dakota. Doc. 80 at ¶ 7. The investigation revealed Dinehdeal was the link between sources of methamphetamine in Arizona and its distribution in South Dakota. Doc. 80 at ¶¶ 7, 12(a), 14, 15. On one occasion, Dinehdeal drove to a casino near Valentine, Nebraska and received methamphetamine. Doc. 80 at ¶ 12(a). After this trip, Dinehdeal delivered

1

approximately two pounds of methamphetamine to a co-conspirator. Doc. 80 at ¶ 12(a). Dinehdeal also used other individuals to transport methamphetamine from Arizona over the course of his drug-trafficking operation. Doc. 80 at ¶¶ 14–15. The investigation indicated a pound of methamphetamine was obtained in one of these trips, and two pounds were brought back to the Rosebud Sioux Indian Reservation on another trip. Doc. 80 at ¶¶ 14–15. A presentence investigation report (PSR) concluded Dinehdeal's drug trafficking involved between 1.5 and 5 kilograms of methamphetamine. Doc. 80 at ¶ 16.

Under the sentencing guidelines, Dinehdeal's total offense level was 31 and he fell into criminal history category III. Doc. 80 at ¶¶ 31, 38. Dinehdeal had one prior federal conviction for possession of methamphetamine with intent to distribute and was on supervised release from that conviction at the time of this offense. Doc. 80 at ¶¶ 36, 37. The PSR determined that the advisory sentencing guideline range for Dinehdeal's conduct was 135 to 168 months of imprisonment. Doc. 80 at ¶ 68. A minimum mandatory sentence of ten years imprisonment applied pursuant to 21 U.S.C. § 841(b)(1)(A). Doc. 80 at ¶ 67. This Court varied downward from the guideline rage consistent with a joint recommendation of counsel and sentenced Dinehdeal to the mandatory minimum term of 120 months in custody. Doc. 86 at 2; Doc. 87 at 2–3.

Dinehdeal is currently incarcerated at FCI La Tuna, a low security facility in Anthony, Texas. Doc. 110 at 5; see also Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Mar. 23, 2021). Dinehdeal's projected release date is September 5, 2025. Doc. 112 at 1057. Dinehdeal is 45 years old. Doc. 112 at 1056.

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. The Centers for Disease Control and Prevention (CDC) has identified certain underlying health conditions that put individuals at higher risk for a severe

2

form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, type 2 diabetes, and several others. See People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated Mar. 15, 2021) (last visited Mar. 23, 2021).

Dinehdeal filed a motion for compassionate release arguing his medical conditions, time already served, contraction of COVID-19 that required him to be hospitalized, and age justified a reduction in his sentence. Doc. 110 at 2. In a supplement filed by his counsel, Dinehdeal contends his conditions of obesity, type 2 diabetes, hypertension, and hyperlipidemia along with his prior aggravated case of COVID-19, and his age, race, and sex[1] are extraordinary and compelling circumstances warranting release in the face of the COVID-19 pandemic and the conditions of his incarceration. Doc. 117 at 7–11. Dinehdeal claims his aggravated case of COVID-19 makes him more vulnerable to serious illness if he were to become reinfected or contract a different strain of the virus. Doc. 117 at 10–11. If released, Dinehdeal intends to live in Tuba City, Arizona near his mother and brother. Doc. 117 at 14.

---

[1] As to the asserted risk factors of age, race, and sex, at 45 years old this Court does not consider Dinehdeal's age to be a persuasive risk factor. Racial and ethnic minorities may be at increased risk, but this factor is related to sociological inequities such as poverty affecting access to healthcare, which are less prevalent in the correctional facility context. See Health Equity Considerations and Racial and Ethnic Minority Groups, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (updated Feb. 12, 2021) (last visited Mar. 23, 2021). As to being male, there is data suggesting more men than women are dying from COVID-19, but it is still unclear why this is so. See Derek M. Griffith et al., Men and COVID-19: A Biopsychosocial Approach to Understanding Sex Differences in Mortality and Recommendations for Practice and Policy Interventions, (2020), https://www.cdc.gov/pcd/issues/2020/20_0247.htm (last visited Mar. 23, 2021). In light of this uncertainty, the sex of the defendant is not a strong factor in determining whether "extraordinary and compelling reasons" exist to warrant compassionate release.

## II.     Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, 892 (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

## III.     Discussion

Dinehdeal submitted a request for compassionate release to the warden of his institution. Doc. 117-1 at 1. This request was denied on January 11, 2021. Doc. 117-1 at 2. The government does not contest administrative exhaustion. See Doc. 120 at 2. Therefore, this Court may entertain Dinehdeal's motion directly.

4

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c).

Congress directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. § 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline § 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D).

Since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has lacked a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D. Iowa 2019) (same). Many district courts have concluded the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and

compelling reason[s] other than" those specifically described. United States v. Condon, 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)). The United States Court of Appeals for the Eighth Circuit has not yet addressed this issue. See United States v. Vangh, -- F.3d --, 2021 WL 952580, *3, n.3 (8th Cir. March 15, 2021); Loggins, 966 F.3d at 892; and United States v. Rodd, 966 F.3d 740 (8th Cir. 2020).

Based upon his contentions, this Court examines Dinehdeal's motion for compassionate release under the "catch-all" provision of U.S.S.G. § 1B1.13 comment note 1(D). This is the broadest provision, indicating that compassionate release may be warranted when "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."[2] U.S.S.G. § 1B1.13 cmt. n. 1(D). Whether "extraordinary and compelling reasons" exist to warrant compassionate release in a particular defendant's case is a highly individualized assessment. See United States v. Amarrah, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020).

Dinehdeal has obesity, type 2 diabetes with diabetic neuropathy, and hypertension, among several other conditions. The CDC recognizes that obesity and type 2 diabetes are conditions that increase the risk of severe illness from COVID-19, while hypertension is a condition that *might* increase the risk for a severe form of COVID-19. See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 23, 2021). Dinehdeal's other medical conditions,

---

[2] Comment note 1(A) provides in relevant part that "extraordinary and compelling" reasons may exist if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii).

hyperlipidemia, problems with eyesight, and dental issues do not make the list of risk-increasing conditions identified by the CDC. Dinehdeal argues his obesity, type 2 diabetes with diabetic neuropathy, and hypertension render him more prone to serious complications if he contracts COVID-19. Doc. 117 at 7–10. That likely is true, but Dinehdeal has already had an aggravated case of COVID-19 and recovered. See e.g., Doc. 112 at 5–7, 84. He reported feeling better after an extended hospital stay and was asymptomatic by January 4, 2021. Doc. 112 at 5–7, 84. Dinehdeal also reported having intentionally lost weight and feeling better as a result. Doc. 112 at 5.

The pertinent inquiry here is whether Dinehdeal is at risk for reinfection of COVID-19, and whether such a reinfection risk combined with Dinehdeal's existing conditions justifies compassionate release. This Court cannot quantify what Dinehdeal's risk of reinfection by the virus might be, but the CDC and other medical resources indicate such a risk is rare. According to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020) (last visited Mar. 23, 2021). There is a growing consensus that "[p]eople who have had evidence of a prior infection with SARS-CoV-2, the virus that causes COVID-19, appear to be well protected against being reinfected with the virus, at least for a few months." See NCI Study Finds that People with SARS-CoV-2 Antibodies May Have a Low Risk of Future Infection, Nat'l Cancer Inst., https://www.cancer.gov/news-events/press-releases/2021/sars-cov-2-antibodies-protect-from-reinfection (dated Feb. 24, 2021) (last visited Mar. 23, 2021).

A retrospective cohort study of reinfection rates among persons who previously had COVID-19 was recently published by the Oxford University Press for the Infection Diseases Society of America. See Megan M. Sheehan et al., Reinfection Rates among Patients who

7

Previously Tested Positive for COVID-19: A Retrospective Cohort Study, Oxford Univ. Press (2021), https://academic.oup.com/cid/advance-article/doi/10.1093/cid/ciab234/6170939 (last visited Mar. 23, 2021). The authors of the study concluded that "previous infection appears to offer high levels of protection against symptomatic infection, as well as severe disease, for a least 8 months." Id. at 11. This developing body of scientific research leads this Court to conclude, to the best of current knowledge and understanding, that reinfection is rare and if reinfection does occur, the outcome is likely to be less severe.

Dinehdeal argues his case is like another from this district where the defendant was granted compassionate release due to the risk of reinfection. Doc. 117 at 10–11 (citing United States v. Waters, No. 5:18-CR-50008-JLV, Doc. 95 (D.S.D. Feb. 16, 2021)). This Court disagrees. Though this Court does not minimize Dinehdeal's medical conditions, the defendant in Waters had much more severe and compelling conditions. See Waters Order dated Feb. 16, 2021 at p. 5. Waters was morbidly obese (weighing between 427 and 452 pounds), and suffered from polyneuropathy, hypertension, pulmonary hypertension, atrial fibrillation, unspecified heart disease, and asthma. Id. Dinehdeal's current weight is approximately 218 pounds, placing him at a BMI of 32.2, which is minimally over the 30.0 threshold for obesity, and he suffers from hypertension and type 2 diabetes with diabetic neuropathy. Doc. 117 at 7–8. Dinehdeal's medical picture is simply not comparable in degree or severity to that in Waters.

The COVID-19 pandemic has impacted this country in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Dinehdeal is currently incarcerated at FCI La Tuna. This Court is familiar with the precautions implemented by the BOP to protect inmates from COVID-19. See BOP Implementing Modified Operations, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Mar. 23, 2021). No measures are 100% effective, and COVID-19 continues to be a health concern in correctional institutions as well as in the general public. As of March 23, 2021, FCI La Tuna currently has zero active COVID-19 cases among inmates and four active COVID-19 cases among staff. See BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last visited Mar. 23, 2021). The facility has reported two inmate deaths and 491 inmates and 68 staff have recovered from the illness. Id. The total population at FCI La Tuna is 864 persons. https://www.bop.gov/locations/institutions/lat (last visited Mar. 23, 2021). Assuming a static population, this means that 57% of the inmates at FCI La Tuna have contracted COVID-19 and fewer than .3% have died as a result. FCI La Tuna appears to be taking appropriate measures to treat and care for inmates who contract COVID-19.

Recently, the BOP has implemented a COVID-19 vaccination program. See https://www.bop.gov/coronavirus/ (last visited Mar. 23, 2021). As of March 23, 2021, 89,271 doses have been administered systemwide. Id. At FCI La Tuna, 163 staff and 135 inmates have been fully inoculated as of March 22, 2021. See Learn More About Vaccinations and View Individual Facility Stats, https://www.bop.gov/coronavirus/ (last visited Mar. 23, 2021). According to the BOP, those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

Id.

Dinehdeal has served approximately 47% of his 120-month sentence. Doc. 112 at 1058. This Court sentenced Dinehdeal to a term of incarceration lower than the advisory guideline range of 135 to 168 months. Overall, the original sentence of 120 months was chosen with care, considering Dinehdeal's and his community's needs and all of the other applicable 3553(a) sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify compassionate release under the First Step Act.

IV.   **Conclusion and Order**

Therefore, it is hereby

ORDERED that Dinehdeal's motion for compassionate release, Doc. 110, is denied.

DATED this 24th day of March, 2021.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE